NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FATEAMA M., *Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, J.W., *Appellees*.

No. 1 CA-JV 19-0103
FILED 5-19-2020

Appeal from the Superior Court in Apache County
No. S0100JD201600024
The Honorable C. Allan Perkins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Fateama M., Long Beach, CA
*Appellant*

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Appellee Department of Child Safety*

Law Office of D. Bryce Patterson, St. Johns
By D. Bryce Patterson
*Counsel for Appellee J.W.*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**W E I N Z W E I G**, Judge:

¶1 Fateama M. ("Mother") appeals the superior court's order terminating her parental rights to J.W. We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Mother is the natural parent of J.W., a minor son born in December 2003. In June 2015, Mother and J.W. were driving from Oklahoma to their home in California when Mother's vehicle broke down in Arizona near the Petrified Forest National Monument, leaving them stranded with limited food and water.

¶3 A Department of Public Safety officer found Mother and J.W. on the shoulder of Interstate 40. Mother was paranoid and delusional. Her behavior was erratic—she declined food and water for fear she was being poisoned. She berated the tow truck driver. She also required J.W. to remain inside the hot vehicle, refusing the officer's request that he be allowed to cool off. Mother was involuntarily admitted to a local hospital for three days, where she underwent a mental health evaluation. The Department of Child Safety took temporary custody of J.W and petitioned for dependency based on neglect.

¶4 The long and tortured procedural history of this case is recounted in earlier decisions of this court. *See Fateama M. v. Dep't of Child Safety*, 1 CA-JV 17-0079, 2017 WL 4837644 (Ariz. App. Oct. 26, 2017) (mem. decision); *Fateama M. v. Dep't of Child Safety*, 1 CA-JV 16-0024, 2016 WL 5939730 (Ariz. App. Oct. 13, 2016) (mem. decision). As relevant here, the juvenile court conducted a dependency hearing in September and October 2015 and found J.W. dependent as to Mother. We vacated the dependency finding.

¶5 DCS then filed a new dependency petition in October 2016, providing additional allegations to substantiate neglect. The juvenile court held another dependency hearing in January and February 2017 and again found J.W. dependent in March 2017. But we dismissed the proceeding

after determining that California had exclusive jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. *Fateama M.*, 1 CA-JV 17-0079, at *3-4, ¶¶ 12, 17-18, 20, 22.

¶6        California ceded its jurisdiction to Arizona a few months later. DCS then moved to terminate Mother's parental rights in March 2018 on grounds of neglect or willful abuse. The juvenile court held a contested four-day severance hearing in February and March of 2019. The court heard testimony from 17 witnesses, including three DCS supervisors, two DCS case managers, one DCS specialist, three psychologists, three therapists, a psychiatric nurse, a visitation aide, Mother's aunt, Mother's friend and Mother. The court terminated Mother's parental rights in April 2019. Mother timely appealed.

¶7        We have jurisdiction pursuant to A.R.S. § 8-235(A).[1]

**DISCUSSION**

¶8        Mother does not challenge the juvenile court's finding of statutory grounds for termination based on neglect and emotional abuse, A.R.S. § 8-533(B)(2), or its findings that termination is in J.W.'s best interests. She therefore waives and abandons any challenge to the termination order. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) ("By failing to challenge the time-in-care ground, Mother has abandoned and waived any contention that the court erred in granting severance on that basis.").

¶9        Mother's arguments are instead directed at the juvenile court's 2015 dependency finding, along with J.W.'s out-of-state placement, a post-termination order, due process, jurisdictional issues and the grant of DCS's motion to amend. But the termination order renders the dependency finding moot, *see Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515, ¶ 10 (App. 2000) (otherwise appealable order from permanency hearing essentially moot due to later order terminating parental rights), and divests Mother of standing to challenge J.W.'s placement and the post-termination

---

[1]        Mother moved for another extension of time to file her reply brief. This court already granted Mother three extensions, including one extension for her reply brief that explained no further extensions would be granted absent unforeseen and extraordinary circumstances. For her latest request, Mother only references a general "technical problem" with her email. Because Mother offers no unforeseen or extraordinary circumstances, we deny the motion.

order, A.R.S. § 8-539 ("An order terminating the parent-child relationship shall divest the parent . . . of all legal rights, privileges, duties and obligations."). Moreover, California ceded its jurisdiction to Arizona, *see* A.R.S. § 25-1031(A)(3), and Mother received notice and an opportunity to be heard, *see Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 11 (App. 2016) (citations omitted) ("Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). Lastly, Mother does not develop her argument concerning DCS's motion to amend and thus waives it. *See* ARCAP 13(a)(7).

¶10　　　　Even without waiver, however, the record contains ample support for the juvenile court's termination order. The court heard from Mother's family and friends who testified about her "troubling behaviors" before and after J.W.'s removal, raised concerns about her "mental state," and shared "substantial fears" over her parenting abilities. The court also heard from mental health professionals who "cast doubt on [Mother's] mental status and her ability to meaningfully parent J.W." Indeed, the professionals most familiar with this case "uniformly expressed significant concerns and doubts on her ability to appropriately parent J.W." and "uniformly believe[d]" that returning J.W. to Mother would be "very harmful to [his] wellbeing." The court also heard from Mother and was "[m]ost trouble[d]" by her "complete inability or refusal to accept any responsibility" for the current circumstances. The court found that Mother has "emotionally bullied her son for years." Above that, the court received evidence and heard testimony about J.W.'s "remarkable progress" since removal.

## CONCLUSION

¶11　　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA